**Case No. 14-4077**

IN THE UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

U.S. COMMODITY FUTURES TRADING COMMISSION,

Plaintiff,

v.

U.S. VENTURES LC, a Utah limited liability company, et al.,

Defendants.

_____

ROBERTO E. PENEDO,

Claimant-Appellant,

v.

R.WAYNE KLEIN, the Court-appointed receiver of U.S. Ventures LC, Winsome Investment Trust, and the assets of Robert J. Andres and Robert L. Holloway,

Receiver – Appellee.

_____

On Appeal from the U.S. District Court for the District of Utah,

Central Division

Case No. 2:11-cv-00099, Judge Bruce S. Jenkins

_____

**BRIEF OF APPELLEE, R. WAYNE KLEIN**

**Oral Argument Not Requested**

_____

David C. Castleberry
dcastleberry@mc2b.com, #11531
MANNING CURTIS BRADSHAW
  & BEDNAR LLC
136 East South Temple, Suite 1300
Salt Lake City, Utah 84111
 (801) 363-5678
*Attorneys for Appellee R. Wayne Klein*

## TABLE OF CONTENTS

Page

STATEMENT OF RELATED CASES ....................................................................1

STATEMENT OF ISSUE..................................................................................1

JURISDICTIONAL STATEMENT ..........................................................1

STATEMENT OF THE CASE................................................................3

    Appointment of the Receiver........................................................3

    Establishment of a Claims Process.................................................4

    Penedo's Claims on the Receivership Estate ...................................6

STATEMENT OF FACTS ......................................................................8

SUMMARY OF ARGUMENT .............................................................11

I.    THE COURT SHOULD AFFIRM THE RULING OF THE
    DISTRICT COURT BELOW BECAUSE THE DISTRICT
    COURT DID NOT ABUSE ITS BROAD DISCRETION
    WHEN IT DENIED PENEDO'S CLAIM. ........................................12

    A.    A District Court Enjoys Broad Discretion When
        Deciding Claims Made on a Receivership Estate
        Established by the District Court. ............................................12

    B.    The District Court's Did Not Abuse Its Discretion When
        It Denied Penedo's Claim Because Winsome Did Not
        Assume the Contractual Obligations of RIO to Pay
        Penedo $4,000,000 and Reimburse Him for Expenses,
        and Because the Statute of Frauds Voids Any Alleged
        Verbal Agreements Requiring Winsome to Pay the Debts
        of RIO......................................................................15

        1.    *Winsome Was Not Contractually Obligated to Pay*
            *RIO's Debts to Penedo.*....................................15

i

2. *The Statute of Frauds Voids Any Alleged Verbal Agreements Requiring Winsome to Pay the Debts of RIO*.................................................................................17

II.   PENEDO HAS FAILED TO PROVIDE OR EVEN REFERENCE ANY EVIDENCE CONTRADICTING THE DISTRICT COURT'S DECISION BELOW. ....................................19

CONCLUSION .....................................................................20

CERTIFICATE OF COMPLIANCE.......................................................21

CERTIFICATE OF DIGITAL SUBMISSION ........................................22

CERTIFICATE OF SERVICE ............................................................23

# TABLE OF AUTHORITIES

Page

Cases

*Broadbent v. Advantage Software, Inc.*, 415 Fed.Appx. 73 (10th Cir. 2011) .. 11, 13

*Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949)...................................2

*Coopers & Lybrand v. Livesay*, 437 U.S. 463 (1978) ...............................................2

*Healthcare Services Group, Inc. v. Utah Dept. of Health*, 40 P. 3d 591 (Utah 2002) ...................................................................................................................18

*Klein v. Cornelius*, Case No. 14-4024 (10th Cir.) ......................................................1

*Klein v. Harper*, 777 F.3d 1144 (10th Cir. 2015) ......................................................1

*Klein v. King, King & Jones*, 2014 WL 3397671 (10th Cir. July 14, 2014) .............1

*Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003 (10th Cir. 2002)...................................16

*N. Am. Specialty Ins. Co. v. Britt Paulk Ins. Agency. Inc.*, 579 F.3d 1106 (10th Cir. 2009).................................................................................................14

*S.E.C. v. Forex Asset Mgmt. LLC, 242 F.3d 325 (5th Cir. 2001)* ............................2

*SEC v. Basic Energy & Affiliated Res., Inc.*, 273 F.3d 657 (6th Cir. 2001)..............2

*SEC v. Capital Consultants LLC*, 453 F.3d 1166 (9th Cir. 2006) ............................2

*SEC v. Vescor Capital Corp.*, 599 F.3d 1189 .................................................. 11, 13

*SEC v. Wang*, 944 F.2d 80 (2nd Cir. 1991) ...............................................................13

*SEC v. Wealth Mgmt. LLC*, 628 F.3d 323 (7th Cir.)..................................................2

*Varley v. Tampax, Inc.*, 855 F.2d 69............................................................... 14, 15

*Wilberg v. Hyatt*, 2012 UT App 5.............................................................................18

*Wing v. Buchanan*, 533 Fed.Appx. 807 (10th Cir. 2013) ........................................13

Statutes

  7 U.S.C. § 13a-1...................................................................................................1

28 U.S.C. § 754......................................................................................................1

28 U.S.C. §1291.....................................................................................................3

Utah Code Ann. § 25-5-4.....................................................................................17

Utah Code Ann. § 25-5-6 .......................................................................................18

Rules

Fed. R. App. P. Rule 10 ........................................................................................19

## STATEMENT OF RELATED CASES

The following actions by the Receiver related to his appointment over the assets and entities at issue here have been appealed to this Court: *Klein v. King, King & Jones*, 2014 WL 3397671 (10th Cir. July 14, 2014); *Klein v. Harper*, 777 F.3d 1144 (10th Cir. 2015); *Klein v. Cornelius*, Case No. 14-4024 (10th Cir.) (pending).

## STATEMENT OF ISSUE

Whether the district court abused its broad discretion when it denied a claim for $4,418,000.00 submitted by Robert E. Penedo ("Penedo") on the receivership estate.

## JURISDICTIONAL STATEMENT

This appeal involves the denial of a claim brought by Penedo against the receivership estate established in a case initiated by the Commodity Futures Trading Commission ("CFTC") against US Ventures LC ("US Ventures"), Winsome Investment Trust ("Winsome"), Robert Holloway ("Holloway"), and Robert Andres ("Andres").  The district court exercised jurisdiction over the claim as an ancillary matter in the case initiated by the CFTC pursuant to the Commodity Exchange Act.  7 U.S.C. § 13a-1; 28 U.S.C. § 754.

1

The Court enjoys jurisdiction over this appeal pursuant to the collateral order doctrine as set forth in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). For jurisdiction to exist under the collateral order doctrine, "the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978). A majority of the circuit courts have held that a district court's decision regarding the method of distribution concerning the assets of a receivership estate is appealable under the collateral order doctrine. *See*, *e.g.*, *SEC v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 330 (5th Cir. 2001), *SEC v. Wealth Mgmt. LLC*, 628 F.3d 323, 330 (7th Cir.); *SEC v. Basic Energy & Affiliated Res., Inc.*, 273 F.3d 657 (6th Cir. 2001); *but see SEC v. Capital Consultants LLC*, 453 F.3d 1166, 1170-73 (9th Cir. 2006).

The collateral order doctrine supplies jurisdiction to the Court over this appeal because the district court's Findings of Fact and Conclusions of Law regarding Penedo's claim conclusively determines the claim and controversy between the Receiver and Penedo. *See Forex Asset Mgmt.*, 242 F.3d at 330. Further, the decision of the district court regarding Penedo's claim resolves an important issue regarding distribution of the assets recovered by the Receiver,

2

which is a separate issue from the merits of the CFTC's claims for relief against US Ventures, Winsome, Holloway, and Andres. *See id.* Finally, the district court's decision regarding Penedo's claim is effectively unreviewable on appeal because the assets from the receivership estate will be distributed, and likely unrecoverable, before the action brought by the CFTC is conclusively established and subject to appellate review pursuant to 28 U.S.C. § 1291. *See id.*

## STATEMENT OF THE CASE

### Appointment of the Receiver

The CFTC initiated this lawsuit by suing US Ventures, Winsome, Andres, and Holloway on January 24, 2011. Appellee Supp. App. at 44-74.[1] The CFTC brought eight claims for relief against the defendants pursuant to the Commodity Exchange Act and Regulations. Appellee Supp. App. at 61-72.

---

[1] The district court clerk has supplied the Court with a Record of Appeal that is over 3,600 pages. Only a fraction of these documents have any relation to the issues on appeal. Further, while the Record on Appeal includes the transcripts of the one-day bench trial held on Penedo's claim, it did not include the exhibits entered into evidence by stipulation, which were considered by the district court when reaching its decision, and cited in the Findings of Fact and Conclusions of Law that denied Penedo's claim. As a result, to assist the Court, the Receiver has prepared a supplemental appendix, which includes: (1) the court's docket, (2) all court documents cited in the Receiver's brief, and (3) the exhibits considered by the district court and entered into evidence by stipulation of the parties.

At the time the Complaint was filed, the CFTC moved the district court for an order, which, among other things, asked for a receiver to be appointed over US Ventures, Winsome, and the assets of Holloway and Andres. Appellee Supp. App. at 76-80; *see also generally* Appellee Supp. App. at 81-116. The district court granted the CFTC's requested relief, and entered an Order Granting Plaintiff's Ex Parte Motion for Statutory Restraining Order, Expedited Discovery, Accounting, Order to Show Cause re Preliminary Injunction and Other Equitable Relief ("Receivership Order") on January 25, 2011, which, among other things, appointed Wayne Klein as the receiver for US Ventures, Winsome, and the assets of Holloway and Andres. *See* Appellee Supp. App. at 123-24. In the Receivership Order, the Court directed and authorized the Receiver to "take exclusive custody, control, and possession of all the funds, property . . . and other assets" of U.S. Ventures and Winsome "in order to preserve assets, investigate, and determine customer claims." Appellee Supp. App. at 118, 124. The recovery of funds is for "payment of restitution . . . for the benefit of customers," and to "distribute remaining funds under the Court's supervision." Appellee Supp. App. at 118.

## Establishment of a Claims Process

On March 7, 2012, the Receiver moved the district court to approve a claims review process, a claim form, and also instructions and guidelines

4

relating to the claims process and the claim form. Appellee Supp. App. at 134-35; *see also* Appellee Supp. App. at 138-47. The district court held two hearings regarding the claims process on April 23, 2012 and May 21, 2012. Appellee Supp. App. at 167. No objections were made in response to the Receiver's plan, and the proposed plan was adopted by the district court, with some slight modifications from the Receiver's original proposal. Appellee Supp. App. at 166-84. For example, the district court required notifications regarding the claims process to be published in a newspaper of national circulation. Appellee Supp. App. at 167.

On May 22, 2012, the district court approved commencement of a claims process to identify allowable claimants for assets of the receivership and to determine the amount of allowable claim for each allowable claimant. Appellee Supp. App. at 20, 166-69. The claims process proceeded as follows pursuant to the order from the district court: (1) the Receiver provided claims forms to potential claimants and published notice of the claims process on his website and in a national newspaper; (2) claims were then sent to the Receiver before a court-imposed deadline; (3) the Receiver evaluated the claims, and asked for more information, if necessary; (4) the Receiver completed his review, and submitted a report to the district court regarding his recommendation as to

whether a claim should be allowed, reduced, or rejected; (5) the claimants could then object to the Receiver's recommendation; and (6) the claimant, Receiver, and district court then devised a format for the district court to resolve objections and the format for distributing funds. Appellee Supp. App. at 222-34.

### Penedo's Claims on the Receivership Estate

As part of his duties under the Receiver Order, the Receiver initiated various lawsuits to recover funds that belong to the receivership estate. The Receiver filed a lawsuit against Penedo to recover funds from Winsome sent to him.[2] Appellee Supp. App. at 287. In response, Penedo moved to intervene in the CFTC lawsuit and for leave to seek a claim for $77,000,000.00 against the receivership estate. Appellee Supp. App. at 185; *see also* Appellee Supp. App. at 188-207. The Receiver opposed the Motion for Intervention, *see* Appellee Supp. App. at 208-18, which the district court denied, explaining that if Penedo had a legitimate claim, he could seek affirmative relief through the claims process previously approved by the district court, *see* Appellee Supp. App. at 219-20.

---

[2] In his lawsuit against Penedo, the Receiver was able to obtain a judgment against Penedo in the amount of $197,000.

Penedo then made a claim on the receivership estate for $4,418,000.
Appellee Supp. App. at 287-295.  The Receiver rejected this claim on the
grounds that the payments that Winsome had previously sent to Penedo and
Fundacion Guatemalteco Americana ("FundaGuam") were for the benefit of
RIO Systems ("RIO") and were not evidence that Winsome had agreed to
assume payment obligations for RIO.  (RIO is a company owned by Clayton L.
Ballard ("Ballard"), a friend of Andres, the individual who operated Winsome
as a Ponzi scheme.)  Penedo claimed that Winsome owes him $4,418,000.00
under a contract between Penedo and RIO Systems – a company unaffiliated
with Winsome.  *Id.*  Penedo based his demand against Winsome on a theory
that RIO's agreement with Penedo was assigned to Winsome.  *Id.*  Penedo,
however, provided no documents showing that the agreement was assigned or
that Winsome owed him money, and the documents and testimony available to
the Receiver demonstrated that no assignment took place. *Id.* In other words, if
Penedo had a claim for his unpaid lobbying fees, the claim should be made, if at
all, against RIO and not Winsome.  *Id.*  As a result, the Receiver recommended
that Penedo's claim be denied.  *Id.*

On January 21, 2013, Penedo filed an objection to the Receiver's Report
and Recommendation on Claims Process.  Appellee Supp. App. at 244-254.  In

the Objection, Penedo sought to have his claim allowed and also sought the ability to conduct discovery to obtain documents and information to support his claim. *Id.*

The district court allowed discovery on Penedo's claim by both parties. Appellee Supp. App. at 390-91. Following discovery, the district court held a one-day bench trial. Appellee Supp. App. at 409-566. After considering the evidence and testimony submitted by the parties at the trial, the district court denied the claim, and the district court entered findings of facts and conclusions of law explaining the basis for the denial of Penedo's claim on June 6, 2014. Appellee Supp. App. at 393-403. Penedo appealed the district court's decision to deny his claim on June 30, 2014. Appellee Supp. App. at 406-07.

## STATEMENT OF FACTS

Penedo asserted that under a Refinery Agreement, he provided lobbying services for RIO under as part of RIO's plans to build a refinery in Guatemala. Appellee Supp. App. at 262-74. The Refinery Agreement, which was effective as of October 23, 2006, was executed by RIO, Penedo, and FundaGuam. *Id.* Under the Refinery Agreement, Penedo was promised a 3% equity stake in the refinery in exchange for 90 days of lobbying services. *Id.* ¶ 2.1; Appellee Supp. App. at 264-65. The Refinery Agreement was amended at least nine times.

8

Appellee Supp. App. at 341-54.  The amendments to the Refinery Agreement were also executed by RIO, Penedo, and FundaGuam.  *Id.*

In his claim, Penedo referenced a Memorandum of Understanding ("MOU") that was entered into by China Railway HuaChuang United Investment Co., Ltd., Pursca Investment Group, Ltd., RIO, and FundaGuam in 2007 related to the refinery project in Guatemala.  Appellee Supp. App. at 356-60.  On March 15, 2010, FundaGuam and RIO entered into another agreement, which was signed by Ballard on behalf of RIO and by Penedo on behalf of FundaGuam.  Like the other agreements, Winsome is not a signatory or even mentioned in these two agreements.  *Id.*

Penedo claimed that the parties to the Refinery Agreement amended the Refinery Agreement verbally, and that Penedo was promised $4,000,000 and reimbursement for his expenses related to his lobbying services.  Appellee Supp. App. at 471.  Penedo claims that he incurred expenses in the amount of $615,000 while lobbying for the establishment of a refinery in Guatamala, *id.* at 472, and that he received $197,000 as reimbursement for those expenses, *id.* at 444.

Notwithstanding the lack of documents and corroborating evidence to support his claims, Penedo testified that he understood that Winsome and RIO

9

were partners and that RIO had assigned its rights under the Refinery

Agreement to Winsome. *Id.* at 441.  Penedo admits that he had not seen a

partnership agreement involving RIO and Winsome, nor was Penedo able to

offer testimony regarding any specific conversations demonstrating that RIO

and Winsome were partners. *Id.* at 441-42.  Incredibly, Penedo testified that

RIO had assigned its rights under the Refinery Agreement to Winsome *before*

the Refinery Agreement became effective. *Id.* at 456-57.

No evidence was presented, other than Penedo's conclusory statements at

trial, demonstrating that Winsome and RIO were partners or that RIO had

assigned its rights under the Refinery Agreement to Winsome.  Penedo could

not identify specific statements demonstrating that the alleged assignment or

verbal agreements occurred. *Id.* at 513.  Ballard, who is a principal of RIO,

testified that Winsome did not have any contractual obligations under the

MOU, the Refinery Agreement, or any of the addenda to the Refinery

Agreement to make payments to Penedo for his services.  Appellee Supp. App.

at 513, 515.  Ballard testified that RIO never assigned its rights under the

Refinery Agreement to Winsome. *Id.* at 515.  While Winsome paid some debts

of RIO, there was no written obligation for Winsome to do so. *Id.* Ballard

testified that Winsome was never an affiliate or subsidiary of RIO. *Id.*

10

Penedo did not produce any copies of any bills he sent Winsome, RIO, or anyone else for his services related to his lobbying efforts under the Refinery Agreement. *Id.* at 481, 533, 538. Penedo did not produce invoices or statements showing what expenses he had incurred. *Id.* at 472. Penedo also explained that he had no personal knowledge of any permits issued by the Guatemalan government for the refinery, nor did he have any personal knowledge of any permits being issued as a result of his lobbying efforts. *Id.* at 478-79. The refinery was never built. *Id*. at 471.

## SUMMARY OF ARGUMENT

A district court "has broad powers and wide discretion to determine relief in an equity receivership." *Broadbent v. Advantage Software, Inc.*, 415 Fed.Appx. 73, 78 (10th Cir. 2011) (citing *SEC v. Vescor Capital Corp.*, 599 F.3d 1189, 1194 (10th Cir. 2010)). Appellate courts will not disturb a district court's decisions relating to distribution of the receivership estate's assets unless it finds that the district court abused its discretion. *See id.*

Here, the district court did not abuse its discretion when it denied Penedo's claim on the receivership estate for $4,418,000. First, Winsome was not contractually obligated to pay RIO's debts to Penedo. While Penedo claims that RIO assigned all of its rights and obligations to Winsome, none of the

11

written agreements at issue mention Winsome, which agreements were executed *after* the supposed assignment was made. Further, the statute of frauds voids any alleged verbal agreements requiring Winsome to pay the debts of RIO regarding Penedo.

Finally, Penedo challenges the district court's ruling, but he has failed to identify any evidence contradicting the district court's decision below in light of the overwhelming documentary evidence and testimony of other parties showing that Winsome did not owe Penedo over $4,000.000. Therefore, the district court did not abuse its discretion when it denied Penedo's claim against the receivership estate and the Receiver respectfully requests the Court to affirm the ruling of the district court below.

## <u>ARGUMENT</u>

**I.     THE COURT SHOULD AFFIRM THE RULING OF THE DISTRICT COURT BELOW BECAUSE THE DISTRICT COURT DID NOT ABUSE ITS BROAD DISCRETION WHEN IT DENIED PENEDO'S CLAIM.**

**A.     A District Court Enjoys Broad Discretion When Deciding Claims Made on a Receivership Estate Established by the District Court.**

A district court "has broad powers and wide discretion to determine relief in an equity receivership." *Broadbent v. Advantage Software, Inc.*, 415

Fed.Appx. 73, 78 (10th Cir. 2011) (citing *SEC v. Vescor Capital Corp.*, 599

F.3d 1189, 1194 (10th Cir. 2010)).

> The basis for broad deference to the district court's supervisory
> role in equity receiverships arises out of the fact that most
> receiverships involve multiple parties and complex transactions,
> and the fact that a primary purpose of equity receiverships is to
> promote orderly and efficient administration of the estate by the
> district court for the benefit of the creditors.

*Id.* (omitting citations and quotations).   "A district judge simply cannot

effectively and successfully supervise a receivership and protect the interests of

its beneficiaries absent broad discretionary power."  *Id.*

Appellate courts will not disturb a district court's decisions relating to

distribution of the receivership estate's assets unless it finds that the district

court abused its discretion in doing so.  *See id.*; *Quilling v. Trade Partners, Inc.*,

572 F.3d 293, 298 (6th Cir. 2009); *SEC v. Wang*, 944 F.2d 80, 81, 84 (2nd Cir.

1991) (explaining that a receiver's distribution plan requires a district court to

employ its general equitable powers which are reviewed for an abuse of

discretion).  The Court has found that a district court's broad discretion to

fashion relief in an equity receivership applies to the distribution of receivership

assets.  *Wing v. Buchanan*, 533 Fed.Appx. 807, 812 (10th Cir. 2013).   Because

the district court properly relied on its equitable powers as it administered the

receivership estate for the benefit of the creditors when it considered Penedo's

claim, the district court's decision to deny Penedo's claim should be affirmed unless the district court abused its discretion. *Id.*; *see also Quilling*, 572 F.3d at 301 (holding that district court did not abuse its discretion when it rejected claim for differential treatment under the receiver's distribution plan).

Proving that a district court abused its discretion is a difficult task. To show that a district court abused its discretion, a party must show that the decision was arbitrary, capricious, whimsical, or a manifestly unreasonable action, or that the district court committed a clear error that exceeds the bounds of permissible choice given a case's circumstances. *See N. Am. Specialty Ins. Co. v. Britt Paulk Ins. Agency. Inc.*, 579 F.3d 1106, 1111 (10th Cir. 2009). The Receiver has found no authority where an appellate court found that a district court abused its discretion when it denied an individual's claim to assets within a receiver's control. Instances where a district court abused its discretion show that the district court has to, without a doubt, have committed an error in its ruling. For example, in *Varley v. Tampax, Inc.*, 855 F.2d 696, (10th Cir. 1988), this Court found that the district court abused its discretion because it made two incongruent rulings within one order, first granting summary judgment to a party and then ruling that the parties lacked diversity jurisdiction, thereby dismissing the case. "In so holding, the district court, in effect, nullified its

14

order granting Tampax's motion for summary judgment…" thereby abusing its

discretion.  *Varley*, 855 F.2d at 698, 700-01.

      **B.**      **The District Court's Did Not Abuse Its Discretion When It Denied Penedo's Claim Because Winsome Did Not Assume the Contractual Obligations of RIO to Pay Penedo $4,000,000 and Reimburse Him for Expenses, and Because the Statute of Frauds Voids Any Alleged Verbal Agreements Requiring Winsome to Pay the Debts of RIO.**

During the proceedings in the district court below, Penedo was tasked

with showing by a preponderance of the evidence that RIO had assigned its

rights under the refinery agreement to Winsome or that Winsome had agreed to

assume contractual obligations from RIO to Penedo.  Penedo failed to meet this

burden for two reasons: (1) Penedo did not establish the existence of a verbal

agreement requiring Winsome to pay him $4,000,000, and (2) even if a verbal

agreement had existed requiring Winsome to pay Penedo over $4,000,000 in

lobbying fees and expenses, such an agreement would have been void under the

statute of frauds.

      *1.*      *Winsome Was Not Contractually Obligated to Pay RIO's Debts to Penedo.*

A party seeking to establish the existence of a verbal contract must

demonstrate how the party came to learn of the oral agreement, who

communicated the agreement to the party, where the contract was formed, and

how it was reached. *See Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1019 (10th

Cir. 2002). Here, although Penedo testified that he understood that Winsome was contractually obligated to pay him $4,000,0000 plus reimbursement for expenses based on verbal agreements, he failed to provide any testimony regarding the specific representations that led him to believe that Winsome was under an obligation to pay him $4,000,000 or for reimbursement of expenses. Appellee Supp. App. at 358-61. Thus, Penedo's claim fails.

Further, the evidence considered below demonstrates that Winsome did not have any obligation to make payments to Penedo. Appellee Supp. App. at 399-401. According to the Refinery Agreement, entered into by RIO, Penedo, and FundaGuam on October 23, 2006, Penedo was promised a 3% stake in a refinery to be built in Guatemala in exchange for Penedo's lobbying efforts. Appellee Supp. App. at 395. Even the supposed obligation to pay Penedo $4,000,000 was never reduced to writing. Winsome was not a signatory to any agreements with RIO, Penedo, or FundaGuam, and Penedo admitted that he had no documents to support his claim, even though he testified at trial that he understood that RIO had assigned its rights under the Refinery Agreement to Winsome *before* any written agreements regarding the refinery were executed. Appellee Supp. App. at 456-57. RIO's owner, Ballard, testified that RIO, FundaGuam, and Penedo were the only parties to the Refinery Agreement, that

16

Winsome has never been affiliated with RIO, and that Winsome had no

contractual obligation to make payments to Penedo.  Appellee Supp. App. at

478.  Therefore, the district court's decision to deny Penedo's claim was not an

abuse of discretion, but instead was supported by the great weight of the

evidence.

    2.    *The Statute of Frauds Voids Any Alleged Verbal Agreements Requiring Winsome to Pay the Debts of RIO.*

Even if the Court were to factually determine that the ambiguous and

unspecified statements Penedo asserts entitled him to receive $4,000,000 for his

lobbying efforts and that Winsome had assumed an obligation to pay this

amount for RIO, such an agreement must be set forth in writing to be

enforceable.  Utah's statute of frauds provides that "every promise to answer for

the debt, default, or miscarriage of another" is void unless the agreement is in

writing.  Utah Code Ann. § 25-5-4(1).  Here, the statute of frauds bars Penedo's

claim that Winsome promised to answer for RIO's alleged debts regarding

Penedo's lobbying services.  *See* Utah Code Ann. § 25-5-4(1).

Penedo argues that the statute of frauds is not implicated in this case

either because Winsome partially performed under an alleged agreement to pay

RIO's debts to Penedo, or because Winsome undertook an original obligation to

pay Penedo for his lobbying services provided to RIO.  *See* Utah Code Ann. §

17

25-5-6(2), (3).  Penedo's argument that one or both of these two exceptions to

Utah's statute of frauds applies would require that, among other elements,

Winsome receive some direct benefit from Penedo.  *See, e.g.*, Utah Code Ann.

25-5-6(3) (providing that this section applies where a promise is made "upon

consideration beneficial to the promisor"); *Healthcare Services Group, Inc. v.

Utah Dept. of Health*, 2002 UT 5, ¶¶ 14-16, 40 P. 3d 591 (finding that statute of

frauds might not apply under Utah Code Ann. § 25-5-6(2) "[w]here a promise is

an original undertaking of the promisor for its own benefit").  Here, Penedo

failed to provide any evidence showing that Winsome benefitted from Penedo's

lobbying services; the refinery was never built and Winsome was not a

signatory to the Refinery Agreement.  Appellee Supp. App. at 395-96, 400-402,

Further, for Penedo to qualify for an exception to the statute of frauds, he

must provide "clear and convincing evidence" to show partial performance

under the contract, *Wilberg v. Hyatt*, 2012 UT App 233, ¶ 9.  Penedo failed to

demonstrate clear and convincing evidence of a verbal contract in light of the

testimony of RIO's owner, in light of his failure to identify any specific

representations made regarding the supposed verbal contract, and in light of the

written agreements regarding the refinery that do not even mention Winsome.

Appellee Supp. App. at 396.  Therefore, the district court did not abuse its

discretion when it denied Penedo's meritless claim, and the ruling below should be affirmed.

## II. PENEDO HAS FAILED TO PROVIDE OR EVEN REFERENCE ANY EVIDENCE CONTRADICTING THE DISTRICT COURT'S DECISION BELOW.

Penedo argues on appeal that the district court ignored evidence supporting his claim that a verbal contract obligated the Receiver to pay him over $4,000,000. To prevail on appeal, Penedo is required to cite to and include the record of all evidence that is relevant to that finding or conclusion. Fed. R. App. P. Rule 10 (b)(2) ("If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all evidence relevant to that finding or conclusion.").

Here, Penedo has wholly ignored his duty to reference and gather the evidence that is relevant to his argument that the district court ignored that a verbal contract existed that required Winsome to pay him over $4,000,000 when none of the written agreements, contemporaneous writings, or testimony from other parties corroborated his contention. Therefore, Penedo's appeal fails, and the district court's ruling that Penedo's claim was properly denied should be upheld.

19

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Receiver respectfully requests that the

Court affirm the district court's decision to deny Penedo's claim.

Respectfully submitted,


/s/ David C. Castleberry
David C. Castleberry
*Attorney for R. Wayne Klein*

20

## CERTIFICATE OF COMPLIANCE

## WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

I certify that:

1.      This brief complies with Fed. R. App. 32(a)(7)(B) and Fed. R. App. P. 29(d)'s length limitations for amicus briefs because this brief contains **[4090]** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type style requirements of Fed. R. App. P. 32(a)(6) because this brief was prepared in proportionally spaced typeface using Microsoft Word 2010 with 14-point Times New Roman type style.

Dated April 15, 2015:

By:    /s/ David C. Castleberry
       David C. Castleberry
       *Attorney for R. Wayne Klein*

21

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

(1)     all required privacy redactions have been made per 10th Cir. R. 25.5;

(2)     the ECF submission is an exact copy of hardcopies submitted to the court and courtesy hardcopies sent to counsel of record;

(3)     the digital submissions have been scanned for viruses with Symantec Endpoint Protection version 12.3.5.3, last updated September 8, 2014 (updated daily via live update) and this submission is free of viruses.

Dated April 15, 2015:


By:     /s/ David C. Castleberry
        David C. Castleberry
        *Attorney for R. Wayne Klein*

## CERTIFICATE OF SERVICE

I, David C. Castleberry, hereby certify that on the 15th day of April, 2015, I

served the **BRIEF OF APPELLEE, R. WAYNE KLEIN** via the CM/ECF Case

Filing System on the list of names below.  I further certify that I have sent

additional true and correct courtesy copies of the brief by overnight mail to the

addresses below


Alan I. Edelman
James H. Holl, III
Gretchen L. Lowe
U.S. Commodity Futures Trading
Commission
1155 21st Street, NW
Washington, DC 20581
kwebb@cftc.gov
jholl@cftc.gov
glowe@cftc.gov
aedelman@cftc.gov


Roberto Penedo
P.O. Box 16123
Jonseboro, AR 72403

By:    /s/ David C. Castleberry
       David C. Castleberry
       *Attorney for R. Wayne Klein*

23

**Case No. 14-4077**
IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

_____

U.S. COMMODITY FUTURES TRADING COMMISSION,
Plaintiff,

v.

U.S. VENTURES LC, a Utah limited liability company, et al.,
Defendants.

_____

ROBERTO E. PENEDO,
Claimant-Appellant,

v.

R.WAYNE KLEIN, the Court-appointed receiver of U.S. Ventures LC, Winsome
Investment Trust, and the assets of Robert J. Andres and Robert L. Holloway,
Receiver – Appellee.

_____

On Appeal from the U.S. District Court for the District of Utah,

Central Division

Case No. 2:11-cv-00099, Judge Bruce S. Jenkins

_____

**EXHIBIT A**

**BRIEF OF APPELLEE, R. WAYNE KLEIN**

**Oral Argument Not Requested**

_____

David C. Castleberry
dcastleberry@mc2b.com, #11531
MANNING CURTIS BRADSHAW
 & BEDNAR LLC
136 East South Temple, Suite 1300
Salt Lake City, Utah 84111
 (801) 363-5678
*Attorneys for Appellee R. Wayne Klein*

**MANNING CURTIS BRADSHAW**
**& BEDNAR LLC**
David C. Castleberry [11531]
dcastleberry@mc2b.com
136 East South Temple, Suite 1300
Salt Lake City, UT 84111
Telephone (801) 363-5678
Facsimile (801) 364-5678

*Attorneys for R. Wayne Klein, the Court-Appointed*
*Receiver of U.S. Ventures, LC, Winsome Investment*
*Trust, and the assets of Robert J. Andres and*
*Robert L. Holloway*

FILED
U.S. DISTRICT COURT

2014 JUN -b  ⊃ 3: 08

DISTRICT OF UTAH

BY:_____
     DEPUTY CLERK

---

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>U.S. VENTURES LC, a Utah limited liability company, WINSOME INVESTMENT TRUST, an unincorporated Texas entity, ROBERT J. ANDRES and ROBERT L. HOLLOWAY,<br><br>Defendants. | **FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER REGARDING CLAIM NO. 1117**<br><br>Case No. 2:11CV00099 BSJ<br><br>District Judge Bruce S. Jenkins |

On June 6, 2013, the Court held a bench trial to consider Claim No. 1117, which was

submitted by Roberto E. Penedo ("Penedo") to R. Wayne Klein (the "Receiver"), Receiver for

U.S. Ventures LC ("US Ventures") and Winsome Investment Trust ("Winsome"). At issue at the

trial was whether Penedo could present sufficient evidence demonstrating that Winsome was

legally obligated to make payments to Penedo.  *See* Scheduling Order re Evidentiary Hearing on

Claim No. 1117, Doc. No. 250.

Following a trial on the merits, the Court took the matters submitted under advisement.

After carefully considering the evidence presented by the parties as well as the law and facts

relating to the Claim, the Court finds in favor of the Receiver and against Penedo, and renders

the following Findings of Fact, Conclusions of Law, and Order on Claim No. 1117.

## FINDINGS OF FACT

### Penedo's Claim

1.      Penedo is a native of Guatemala, who currently resides in Arkansas.  *U.S.*
*Commodity Futures Trading Commission vs. U.S. Ventures LC et al.*, Transcript of One-Day

Bench Trial held on June 6, 2013 regarding Claim No. 1117 ("Trial Testimony") 20:9-13.

2.      The Receiver was appointed as receiver for Winsome and US Ventures in

connection with an action filed by the Commodity Futures Trading Commission against US

Ventures, Winsome, and Robert Holloway and Robert Andres.  *Id.* 112:20-24.

3.      Robert Andres began to operate Winsome in the fall of 2005 until the Receiver

took control of Winsome after his appointment.  *Id.* 113:2-9; 115:1-19.

4.      In his capacity as Receiver, the Receiver prepared a claim form, a claims

procedure and a claims guideline that would allow claimants to make a claim on the receivership

estate of US Ventures and Winsome.  *Id.* 123:5-124:9.

5.      Penedo claims that he is owed $4,000,000 by Winsome pursuant to alleged verbal

agreements.  *Id.* 63:22-25.

{00619124.DOCX /}

6.      Penedo claims that he incurred expenses in the amount of $615,000 while lobbying for the refinery, *id.* 64:1-4, and that he received $197,000 as reimbursement for those expenses, *id.* 36:20-22.

7.      As a result, Penedo filed a claim against the Receivership Estate in the amount of $4,418,000.   Proof of Claim Form, Stipulated Exhibit No. 18;[1] Trial Testimony 63:17-21.

8.      Penedo's claim was rejected by the Receiver.   Notice of Rejected Proof of Claim, Stipulated Exhibit No. 19.

### Penedo Has Not Provided Sufficient Evidence to Support his Claim that Winsome was Contractually Obligated to Pay Him $4,418,000

9.      To Support his Claim No. 1117, Penedo asserts that he provided lobbying services pursuant to a Refinery Agreement for a company called RIO Systems, Inc. ("RIO").   Refinery Agreement, Stipulated Exhibit No. 1.

10.      The lobbying by Penedo was to aid RIO in building a refinery in Guatemala.  *Id.*

11.      The Refinery Agreement, which was effective as of October 23, 2006, was executed by RIO, Penedo, and Fundacion Guatemalteco Americana ("FundaGuam").  *Id.*

12.      Under the Refinery Agreement, Penedo was promised a 3% equity stake in the refinery in exchange for 90 days of lobbying services.  *Id.* ¶ 2.1; Trial Testimony 28:19-29:3.

13.      Winsome is not a signatory to the Refinery Agreement or even mentioned in the agreement.   Refinery Agreement, Stipulated Exhibit No. 1.

14.      The Refinery Agreement was amended at least nine times.  *See* Amendments to Refinery Agreement, Stipulated Exhibit Nos. 2-10.

---

[1] The parties stipulated to the admission of a number of exhibits in the Stipulated Order re Evidentiary Hearing on Claim No. 1117, Doc. No. 266, and all of the exhibits referenced in the Findings of Fact refer to documents to which the parties stipulated their admission.

15.     The amendments to the Refinery Agreement were also executed by RIO, Penedo, and FundaGuam. *Id.*

16.     Winsome is not a signatory to the amendments to the Refinery Agreement or even mentioned in any of the amendments. *Id.*

17.     Penedo also referenced a Memorandum of Understanding ("MOU") that was entered into by China Railway HuaChuang United Investment Co., Ltd., Pursca Investment Group, Ltd., RIO, and FundaGuam in 2007 related to the refinery project in Guatemala. Memorandum of Understanding, Stipulated Exhibit No. 11.

18.     Like the Refinery Agreement, Winsome is not a signatory or even mentioned in the MOU. *Id.*

19.     On March 15, 2010, FundaGuam and RIO entered into another agreement, which was signed by Clayton Ballard ("Ballard") on behalf of RIO and by Penedo on behalf of FundaGuam, and like the other agreements, Winsome is not a signatory or even mentioned in the agreements. *See* Social and Economic Development & Implementation Agreement for the MesoAmerica Project, Stipulated Exhibit No. 12.

20.     Penedo claims that the parties amended the Refinery Agreement verbally, and that Penedo was promised $4,000,000 for his services.  Trial Testimony 63:22-64:4.

21.     Penedo also claims that he should be reimbursed his expenses even though he has no proof any expenses. *Id.* 64:1-4. ("Q. And it's your testimony that you were owed $615,000 in expenses even though you have no proof of these expenses; isn't that right?  A. Yes.").

22.     At the trial, Penedo testified that he understood that Winsome and RIO were partners. *Id.* 33:8-12.

{00619124.DOCX /}

23.     Penedo admits that he had not seen a partnership agreement involving RIO and Winsome, nor was Penedo able to offer testimony regarding any specific conversations demonstrating that RIO and Winsome were partners. *Id.* 33:16-17 ("Q. Did you ever see any kind of partnership agreement? A. No."); *id.* 47:2-13 ("Q. Who told you that Winsome and RIO were partners? A. Mr. Andres and Mr. Clayton Ballard. Q. What specifically was said? A. That is when we started discussing, like I mentioned earlier, when we start discussing the services they want me to provide them and they said that they are – Q. So who said what? I'm trying to get – what did Mr. Ballard say to you, do you remember? A. Mr. Castleberry, I can tell you concerning the whole meeting, but I cannot exactly recall exactly who say this, who say that, but the whole meeting was like I mentioned to you." ).

24.     Penedo also testified that before the Refinery Agreement was effective that RIO had assigned its rights under the Refinery Agreement to Winsome. *Id.* 48:11-49:7. ("Q. Now you have testified that you believed RIO assigned its rights to Winsome Investment Trust relating to this refinery agreement; isn't that right? A. Yes. Q. And when did that – as far as you understand, when did that assignment occur? A. I can tell you from the beginning – I cannot exactly tell you when, but I can tell you from the beginning that was according to our conversation, according to what I understood, that they were partners. That was my clear understanding in all of this. Q. What is the beginning, the beginning of what? A. September 2006, our conversations. Q. Now it's true, is it not, that you have no documents showing that RIO Systems, Inc. assigned any rights to Winsome Investment Trust related to this agreement. A. I don't have any written documents. Q. So it's your testimony today that from the very beginning, even before the refinery agreement was signed, [that] in September 2006, RIO had assigned its rights to Winsome Investment Trust? A. We can interpret it that way, yes.").

25.     No evidence was presented, other than Penedo's statements at trial, that Winsome and RIO were partners or that RIO had assigned its rights under the Refinery Agreement to Winsome.

26.     In February 2006, RIO agreed to pay Robert Andres $20,256,000 "for value received." Promissory Note, Stipulated Exhibit No. 43.

27.     Winsome is not a party to the promissory note, which shows, at most, that RIO owed a contingent debt to Andres, not to Winsome. *Id.*

28.     Ballard, who is a principal of RIO, testified that Winsome did not have any contractual obligations under the MOU, the Refinery Agreement, or any of the addenda to the Refinery Agreement to make payments to Penedo for his services. *Id.* 105:10-18.

29.     Ballard testified that RIO never assigned its rights under the Refinery Agreement to Winsome. *Id.* 105:21-25.

30.     Ballard testified that Winsome paid some debts of RIO, but there was no written obligation for Winsome to do so. *Id.* 107:1-3.

31.     Ballard testified that Winsome was never an affiliate or subsidiary of RIO. *Id.* 107:14-16.

32.     Ballard also testified that in October of 2012, Penedo approached Ballard and asked that Ballard sign an affidavit stating that RIO had assigned its rights in the Refinery Agreement to Winsome, but Ballard refused to sign Penedo's affidavit because it was not true or accurate. *Id.* 110:5-111:1.

**Penedo Has Not Shown How His Lobbying Services Benefited Winsome**

33.    Penedo has not produced any copies of any bills he sent Winsome, RIO, or anyone else for his services related to his lobbying efforts under the Refinery Agreement.  *Id.* 73:5-8; 125:11-14; 130:10-15.

34.    When asked what he did for the $4,000,000 he claims, Penedo responded by saying that he arranged more than 100 meetings with Guatemalan authorities, with the Catholic Church, and with big oil companies in Ukraine and Russia.  *Id.* 65:17-24.

35.    Penedo also testified that he met "with the president of congress as well as the president of Guatemala."  *Id.* 67:9-10.

36.    When asked the name of the "president of congress", Penedo responded by saying that he could not remember but that his "name sounds foreign."  *Id.* 67:13-21.

37.    Penedo has no personal knowledge of any permits issued by the Guatemalan government for the refinery, nor does he have any personal knowledge of any permits being issued as a result of his lobbying efforts.  *Id.* 70:19-71:10.

38.    The refinery has never been built.  *Id.* 63:3-4.

## CONCLUSIONS OF LAW

**RIO Did Not Assign Its Rights Under the Refinery Agreement to Winsome**

1.    In order for Penedo to hold Winsome financially responsible for payments that Penedo says are due him from RIO, Penedo bears the burden of proving that RIO had assigned its rights under the refinery agreement to Winsome or that Winsome had agreed to assume contractual obligations from RIO to Penedo.

2.    Penedo has failed to carry his burden of proof to show that RIO had assigned its rights under the Refinery Agreement to Winsome.

{00619124.DOCX /}

3.      Penedo alleges that the assignment of the Refinery Agreement to Winsome took place in September or October 2006; however, Penedo entered into the Refinery Agreement and numerous amendments to the Refinery Agreement with RIO after the time Penedo postulates that RIO assigned its rights to Winsome.

**Winsome Was Not Contractually Obligated to Pay RIO's Debts to Penedo**

4.      No writing obligates Winsome to pay Penedo $4,000,000 plus reimbursements for expenses, and Penedo's vague description of verbal agreements between RIO and Winsome, which are uncorroborated by any written documents, is insufficient to carry his burden of proof to show that Winsome was contractually obligated to pay Penedo $4,00,000 plus reimbursement for expenses.

5.      Although Penedo testified that he understood that Winsome was contractually obligated to pay him $4,000,0000 plus reimbursement for expenses based on "verbal agreements," he has failed to provide testimony with respect to the specific representations that led him to believe that Winsome was under an obligation to pay him $4,000,000 or for reimbursement of expenses.

6.      While Penedo has claimed that RIO provided Andres a promissory note for $20,256,000, the fact that RIO may have owed Andres money does not demonstrate that Winsome was contractually obligated to pay Penedo money for lobbying services Penedo performed for RIO pursuant to the Refinery Agreement entered into with RIO.

7.      The more compelling evidence introduced at the trial demonstrates that Winsome did not have an obligation to make the payments to Penedo.

8.      RIO's owner, Ballard, provided testimony that RIO, FundaGuam, and Penedo

were the only parties to the Refinery Agreement, that Winsome has never been affiliated with

RIO, and that Winsome had no contractual obligation to make payments to Penedo.

**The Statute of Frauds Voids Any Alleged Verbal Agreements
Requiring Winsome to Pay the Debts of RIO**

9.      Even if the Court were to consider the ambiguous and unspecified statements

Penedo asserts were made and Penedo's argument that those statements represented an agreement

by Winsome to pay RIO's obligation under the Refinery Agreement, such an agreement must be

set forth in writing.

10.      Utah's statute of frauds provides that "every promise to answer for the debt,

default, or miscarriage of another" is void unless the agreement is in writing.  Utah Code Ann. §

25-5-4(1).

11.      Penedo points to no written agreement by Winsome to pay RIO's obligation, and

any such alleged verbal agreement that Winsome would pay RIO's expenses, even if it exists, is

void.

12.      Penedo argues that the Court should apply exceptions to the statute of frauds set

forth in Utah Code Ann. § 25-5-6(2) and (3) to find that Winsome undertook an "original

obligation" to pay Penedo for his claimed lobbying services or that Winsome benefited from

Penedo's lobbying efforts.

13.      For Penedo to successfully prove an exception to the statute of frauds based on

partial performance, he must do so by clear and convincing evidence.  *See, e.g., Wilberg v. Hyatt*,

2012 UT App 233, ¶ 9, 285 P.3d 1249 ("Ultimately, the part performance exception to the statute

of frauds must be proved by clear and convincing evidence.")

14.     Penedo failed to present clear and convincing evidence that Winsome undertook an original obligation to pay Penedo or that the payments from Winsome to Penedo were "part performance" of an actual agreement by Winsome to assume the obligation to pay a debt to Penedo.

15.     Also, Penedo's argument under Utah Code Ann. § 25-5-6(2) or (3) requires that, among other elements, Winsome receive some direct benefit from Penedo. *See, e.g.*, Utah Code Ann. 25-5-6(3) (providing that this section applies where a promise is made "upon consideration beneficial to the promisor"); *Healthcare Services Group, Inc. v. Utah Dept. of Health*, 40 P. 3d 591, 596 (Utah 2002) (finding that statute of frauds might not apply under Utah Code Ann. § 25-5-6(2) "[w]here a promise is an original undertaking of the promisor for its own benefit").

16.     Penedo has failed to carry his burden of proof to show that Winsome was benefited by Penedo's lobbying services because, for example, the refinery was never built and there is no proof that permits for the refinery were ever obtained.

17.     The Court takes judicial notice that the Receiver filed a separate lawsuit against Penedo, seeking recovery of $197,000 in payments from Winsome to Penedo. *Klein v. Fundacion Guatelmateco Americana and Roberto Penedo*, Case No. 2:12-cv-00049 (D. Utah). On March 3, 2014, Judge Nuffer issued a Memorandum Decision and Order Granting Plaintiff's Summary Judgment, entering judgment of $197,000 in favor of the Receiver and against Penedo. The Court notes that the instant order is consistent with the findings, conclusions, and order entered by Judge Nuffer.

### **ORDER**

Based on the foregoing Findings of Fact and Conclusions of Law, the Court finds that the evidence presented by Penedo is insufficient to demonstrate that Winsome had a legal obligation

to make payments to Penedo or that Penedo's claim against the Receivership Estate should be

allowed.  As a result, and for good cause appearing, the Court orders that Claim No. 1117

submitted by Penedo in the amount of $4,418,000 be denied.

DATED this _6th_ day of ~~March~~ June, 2014.

BY THE COURT:

Honorable Bruce S. Jenkins
District Court Judge

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing **FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER REGARDING CLAIM NO. 1117** to be served in the method indicated below to the Defendant in this action this ___th day of March, 2014.

| | |
|---|---|
| ___ VIA FACSIMILE<br>___ VIA HAND DELIVERY<br>___ VIA U.S. MAIL<br>___ VIA FEDERAL EXPRESS<br>___ VIA EMAIL<br>_x_ VIA ECF | Kevin S. Webb<br>James H. Holl, III<br>Gretchen L. Lowe<br>Alan I. Edelman<br>U.S. Commodity Futures Trading<br>Commission<br>1155 21st Street, NW<br>Washington, DC 20581<br>kwebb@cftc.gov<br>jholl@cftc.gov<br>glowe@cftc.gov<br>aedelman@cftc.gov |
| ___ VIA FACSIMILE<br>___ VIA HAND DELIVERY<br>___ VIA U.S. MAIL<br>___ VIA FEDERAL EXPRESS<br>___ VIA EMAIL<br>_x_ VIA ECF | Jeannette Swent<br>US Attorney's Office<br>185 South State Street, Suite 300<br>Salt Lake City, UT  84111<br>Jeannette.Swent@usdoj.gov<br>*Attorneys for Plaintiff* |
| ___ VIA FACSIMILE<br>___ VIA HAND DELIVERY<br>_x_ VIA U.S. MAIL<br>___ VIA FEDERAL EXPRESS<br>___ VIA EMAIL<br>___ VIA ECF | Robert J. Andres<br>10802 Archmont Dr.<br>Houston, TX 77070 |
| ___ VIA FACSIMILE<br>___ VIA HAND DELIVERY<br>___ VIA U.S. MAIL<br>___ VIA FEDERAL EXPRESS<br>___ VIA EMAIL<br>_x_ VIA ECF | Benjamin C. McMurray<br>Robert K. Hunt<br>Utah Federal Defender Office<br>46 W. Broadway, Suite 110<br>Salt Lake City, Utah 84101<br>benji_mcmurray@fd.org<br>robert_hunt@fd.org<br>*Attorneys for Robert J. Andres* |

| | |
|---|---|
| ___ VIA FACSIMILE | Zaman Ali |
| ___ VIA HAND DELIVERY | 125 Riverglen Dr. SE |
| _x_ VIA U.S. MAIL | Calgary, Alberta T2C 3X1 |
| ___ VIA FEDERAL EXPRESS | Canada |
| ___ VIA EMAIL | zaman.ali@shaw.ca |
| ___ VIA ECF | |

| | |
|---|---|
| ___ VIA FACSIMILE | R. Wayne Klein |
| ___ VIA HAND DELIVERY | Klein & Associates |
| ___ VIA U.S. MAIL | 10 Exchange Place, Suite 502 |
| ___ VIA FEDERAL EXPRESS | Salt Lake City, UT  84111 |
| _x_ VIA EMAIL | |
| ___ VIA ECF | |

| | |
|---|---|
| ___ VIA FACSIMILE | Robert L. Holloway |
| ___ VIA HAND DELIVERY | 31878 Del Obispo Suite 118-477 |
| _x_ VIA U.S. MAIL | San Juan Capistrano, CA  92675 |
| ___ VIA FEDERAL EXPRESS | |
| ___ VIA EMAIL | |
| ___ VIA ECF | |

| | |
|---|---|
| ___ VIA FACSIMILE | Jeffery J. Owens |
| ___ VIA HAND DELIVERY | Strong & Hanni |
| ___ VIA U.S. MAIL | 3 Triad Center, Suite 500 |
| ___ VIA FEDERAL EXPRESS | Salt Lake City, Utah 84180 |
| ___ VIA EMAIL | jowens@strongandhanni.com |
| _x_ VIA ECF | *Attorneys for Roberto E. Penedo* |